**SIGNED THIS: September 8, 2022**

_____
**Mary P. Gorman**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.    22-70120 |
| Le La Nails, LLC, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| In Re | ) | |
| | ) | Case No.    22-70305 |
| Autopro Transportation Inc., | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

## O P I N I O N

Before the Court are motions to examine debtors' transactions with attorneys filed by the United States Trustee ("UST") in each of the above-captioned cases. The UST alleges that, in filing the cases using incorrect names for the intended debtors and thereby filing on behalf nonexistent entities, the attorneys for the debtors failed to provide any value in exchange for

compensation received. For the reasons set forth below, both motions will be granted and the attorneys will be ordered to disgorge all fees and costs paid to them.

## I.    Factual and Procedural Background

On August 18, 2022, the Court entered orders dismissing each of the above-captioned cases, setting forth detailed findings in a combined opinion. *In re Le La Nails, LLC,* 2022 WL 3568023, at *1 (Bankr. C.D. Ill. Aug. 18, 2022). The facts and circumstances underlying the UST's motions to examine the debtors' transactions with attorneys now before the Court relate to the same facts and circumstances that served as the basis for dismissal of both cases. Those facts are summarized herein.[1]

### A.  Le La Nails, LLC

Le La Nails, LLC filed a voluntary petition under Chapter 7 on March 14, 2022. Attorney Jeffrey Abbott signed and filed the petition. The Statement of Financial Affairs included with the petition disclosed two prepetition payments to Ostling & Associates ("Ostling Firm"): $950 for attorney fees and $338 for filing fees. Attorney Abbott also signed and filed a Disclosure of Compensation of Attorney for Debtor certifying his receipt of $950 from the purported debtor as agreed compensation for his legal services. James Inghram was appointed to serve as the Chapter 7 trustee in the case.

---

[1] To the extent facts repeated herein differ from the facts set forth in the August 18th opinion, the facts in the August 18th opinion shall control. Fed. R. Bankr. P. 7052.

In reviewing the case file following his appointment, Trustee Inghram noted a discrepancy between the purported debtor's name on the petition and the name on the tax returns provided to him; he checked the name of Le La Nails, LLC in the Illinois Secretary of State's records and found no record of the purported debtor. Trustee Inghram raised the issue with debtor's counsel at creditors meetings held May 16, 2022, and June 6, 2022, telling him that an amended petition should be filed to correct the debtor's name.

On June 27, 2022, the UST filed a motion to dismiss claiming that Le La Nails, LLC was not and never had been a legal entity eligible to file a bankruptcy case and could not serve as a placeholder for another debtor. The UST suggested that the intended debtor was most likely La Nails – HT LLC, an entity currently authorized to do business in Illinois and apparently owned by and sharing an address with the individual who signed the petition for Le La Nails, LLC. The UST also filed the Motion to Examine Debtor's Transactions with Attorney now before the Court, outlining the same issues raised in the motion to dismiss and arguing that the debtor's attorney so wholly failed to satisfy his professional duties that the services provided were valueless.

Responding to the motion to dismiss, Attorney Abbott acknowledged that the case was filed under an incorrect name and said that an amended petition would be filed. He sought to defend his inaction until that point by claiming that he had first needed to do research "to confirm adequate grounds for amendment." He framed his error of incorrectly reporting the debtor's name on the petition as excusable neglect and said that he believed someone in his

office had checked the Secretary of State's records before the case filing. He asked that the motion to dismiss be denied. On July 27, 2022—four and a half months after the original petition was filed and ten weeks after the creditors meeting at which Trustee Inghram first raised the issue—Attorney Abbott filed an amended petition purporting to change the name of the debtor to La Nails – HT LLC.

At a hearing on the motion to dismiss, the attorney for the UST detailed the findings of his investigation of what had occurred in the case. He asserted that Attorney Abbott had a duty to investigate the correct name of a corporate debtor before filing a case and that dismissal was appropriate because the purported debtor named in the petition did not exist. Attorney Abbott appeared at the hearing. He acknowledged the delay in addressing the problem and agreed that he could have been more proactive in researching the issue before the UST filed the motion to dismiss. When asked by the Court whether his office had a policy of running the names of corporate debtors through the Secretary of State's website for verification, Attorney Abbott equivocated. He said that he had assumed that such a search had been run when he filed the case. He said that he had since talked with one of his firm's paralegals who told him that it had been her practice to run such searches when she handled business cases for the firm. But that paralegal was no longer handling business cases for the firm and had no involvement in these cases. Attorney Abbott said he thought a check of the public records had been run before the case was filed but provided no reason why he would have thought that; he did

not say that he or anyone else had provided any training to the employee working on this case with him, and he made no claim that his firm uses a procedures manual of any type that would have provided guidance to his clerical staff on the issue. Clearly, no search was done in this case.

At the conclusion of the hearing, this Court stated that the case would be dismissed and that an opinion and order would be forthcoming. As to the UST's Motion to Examine Debtor's Transactions with Attorney, the Court inquired whether Attorney Abbott intended to file a written response to the motion. Attorney Abbott answered in the affirmative, and an order setting a deadline for the response was entered. Thereafter, Attorney Abbott filed a short response to the UST's motion merely stating that, "[d]ue to the Court's earlier announced decision it would dismiss the case, Counsel elects to not file a substantive response." After the deadline for responsive filings passed, the matter was taken under advisement.

### B. Autopro Transportation Inc.

Autopro Transportation Inc. filed a voluntary Chapter 7 petition on May 19, 2022. The Statement of Financial Affairs included with the petition disclosed prepetition payments of $750 in attorney fees and $338 in filing fees paid to the Ostling Firm. Attorney Thomas Carlisle signed and filed the petition, as well as his Disclosure of Compensation of Attorney for Debtor certifying his receipt of $750 from the purported debtor in exchange for legal services. Attorney Abbott, associated with Attorney Carlisle at the Ostling Firm,

5

entered an additional appearance for the purported debtor. He also filed a fee disclosure certifying that he had received or agreed to accept no additional compensation for his work in the case. Andrew Erickson was appointed to serve as the Chapter 7 trustee in the case.

Eight days after the case was filed, Trustee Erickson filed a motion to compel the production of a significant volume of corporate and financial records. He noted specifically that he was seeking documentation confirming the purported debtor's legal name and place of incorporation because he had been unable to locate any record of the purported debtor through the Illinois Secretary of State's online database.

At a hearing on the motion to compel, Trustee Erickson repeated his concern that he could not find any record of Autopro Transportation Inc. on the Secretary of State's website. He further reported contacting Farmer's Bank about several bank accounts that had been scheduled. Farmer's Bank had responded that it had located the accounts; one was held in the name of Auto Pro Transport, Inc. under a different employer identification number ("EIN") than the one used on the petition, and the other was held in the name of A Southern Kitchen LLC. Trustee Erickson said that he had located a record of Auto Pro Transport, Inc. being incorporated in Illinois and that the individuals associated with that entity appeared to be the same as those who had filed this case. He questioned whether he could exercise control over assets owned by an entity other than the named debtor and complained that he had yet to receive

any assistance from the purported debtor's attorneys in sorting out the confusion.

Attorney Abbott appeared and said that he had seen the requests for information from Trustee Erickson and that he attempted to look into the issues. He opined that perhaps the debtor had put the wrong name on its bank account but admitted that would not explain the lack of incorporation records for Autopro Transportation Inc. with the Secretary of State. He promised that he would try to get documents to Trustee Erickson promptly. When questioned by the Court as to whether his office had filed the case without verifying their client's name through the Secretary of State's website, Attorney Abbott said that he was not aware that a search of the website had been made. An order was entered requiring that all requested documents be provided within seven days, and the matter was reset for further hearing to monitor compliance.

At the continued hearing on Trustee Erickson's motion, he reported that he had reviewed the articles of incorporation for the purported debtor and that the name on the document was Auto Pro Transport, Inc. rather than Autopro Transportation Inc. as shown on the petition. He also said that he had reviewed IRS notices and determined that the EIN on the petition did not match the EIN assigned by the IRS to Auto Pro Transport, Inc. He repeated his concerns about the scheduled Farmer's Bank accounts being held in the names of other entities. He also reported that he had attempted to hold a scheduled creditors meeting the day before, but no one had appeared for the purported debtor.

Attorney Abbott appeared at the continued hearing but had no explanation for the missed creditors meeting; he said Attorney Carlisle was assigned to cover the meeting. He also said that he was preparing to amend the petition but had not yet done so. When questioned by the Court about whether a petition with an incorrect debtor name and incorrect EIN could be amended, he mentioned the Le La Nails case and said that Trustee Inghram had said that such amendments could be made. The Court admonished Attorney Abbott that the problems were serious, that it appeared that the basic investigation into the facts required by Federal Rule of Bankruptcy Procedure 9011 had not been done, and that sanctions might be appropriate for such failure. Attorney Abbott asked for a short continuance to research the law, and the matter was again set over.

The UST filed a motion to dismiss on June 27, 2022. In the motion, the UST asserted that Autopro Transportation Inc. was not and never had been an entity eligible to file bankruptcy because it never existed. The UST said that the correct name for the debtor appeared to be Auto Pro Transport, Inc. but also noted that the EIN on the petition appeared to be incorrect. The UST questioned whether the funds already collected by Trustee Erickson from scheduled bank accounts were actually property of the estate. The UST asked that the case be dismissed and that Trustee Erickson be authorized to return the funds he had collected. The UST also filed the Motion to Examine Debtor's Transactions with Attorney now before the Court, outlining the same issues raised in the motion to dismiss and arguing that the debtor's counsel so wholly

failed to satisfy his professional duties that the services provided were worthless.

The day before the hearing on the motion to dismiss, Attorney Abbott filed a response virtually identical to the response filed in the Le La Nails case. He said that he was delayed in filing an amended petition due to the UST's filing of the motion to dismiss. He also claimed that "counsel" assumed that the Secretary of State's website had been checked before the case was filed; he did not specify whether "counsel" referred to himself, Attorney Carlisle, or both. He cited several cases that he said supported the allowance of an amended petition to correct the errors in the case. He filed an amended petition changing the debtor's name to Auto Pro Transport, Inc. and correcting the EIN.

The hearing on the motion to dismiss and Motion to Examine Debtor's Transactions with Attorney was held shortly after the conclusion of the hearing on the similar motions in the Le La Nails case. The attorney for the UST, knowing that he had prevailed on the motion to dismiss in the first case, added only that this case had been filed three days after the continued creditors meeting in the Le La Nails case at which Trustee Inghram had alerted the attorneys to the problem with the debtor's name there. The UST's attorney suggested that if Attorney Abbott and his colleagues had taken Trustee Inghram's concerns seriously, they would have quickly updated their procedures and this case would not have been filed using an incorrect name and EIN.

Attorney Abbott had little to add. When asked about the incorrect EIN, he said that it was his impression that the correct EIN had been used. He did not explain why then the day before he had filed an amended petition changing not only the debtor's name but also the EIN. Trustee Erickson stated that, notwithstanding the work he had in the case and the fact that he had collected a small amount of funds, he believed that the case should be dismissed. He requested that the Court authorize him to refund the money he had collected.

At the conclusion of the hearing, this Court stated that the case would be dismissed, and an opinion and order would be forthcoming. The Court also said it would be entering an order similar to the one in the Le La Nails case setting a response deadline on the UST's Motion to Examine Debtor's Transactions with Attorney. The response ultimately filed by Attorney Abbott mirrored the response filed in the Le La Nails case and stated only that, "[d]ue to the Court's earlier announced decision it would dismiss the case, Counsel elects to not file a substantive response." After the response deadline passed, the matter was taken under advisement.

## II.    Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). The review of attorneys' transactions with debtors and the determination of appropriate sanctions in connection therewith relate

to the administration of bankruptcy cases and are core proceedings. 28 U.S.C. §157(b)(2)(A). These matters arise from the debtors' bankruptcies themselves and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III.    Legal Analysis

This Court has broad power to review financial transactions between debtors and their attorneys and to order disgorgement by attorneys when fees paid to them are excessive. The UST invokes §329 as providing the authority for the Court to do so in both cases here. Section 329(a) requires attorneys to disclose their financial transactions with debtors even when they do not intend to seek compensation from the estate. 11 U.S.C. §329(a); *see also* Fed. R. Bankr. P. 2016(b). Section 329(b) further provides that, when fees exceed the reasonable value of the services provided, the Court may cancel any agreement as to such fees and order disgorgement of fees to the extent deemed excessive. 11 U.S.C. §329(b). Any party in interest, including the UST, may ask a court to review any amounts paid to an attorney in connection with the filing of a petition under the Bankruptcy Code to determine whether such payments are excessive. Fed. R. Bankr. P. 2017(a). This Court's authority to review the purported debtors' transactions with Attorney Abbott, Attorney Carlisle, and the Ostling Firm in these cases is therefore clear and has not been challenged.

The District Court for the Central District of Illinois has adopted the Rules of Professional Conduct as promulgated by the Illinois Supreme Court to govern practice in all federal courts within the District. CDIL-LR 83.6(D). Under those rules, an attorney is required to provide competent representation to clients, and competent representation is defined as requiring the "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Ill. R. Prof'l Conduct (2010) R. 1.1 (eff. Jan. 1, 2010). Attorneys are also prohibited from charging or collecting unreasonable fees. Ill. R. Prof'l Conduct (2010) R. 1.5(a) (eff. Jan. 1, 2010).

In Chapter 7 cases, the required professional standards also include the mandates of §707(b)(4) of the Bankruptcy Code, which provides, in part:

> (C) The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has—
>
> > (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
> >
> > (ii) determined that the petition, pleading, or written motion—
> >
> > > (I) is well grounded in fact; and
> > >
> > > (II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).
>
> (D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

11 U.S.C. §707(b)(4)(C), (D).

Also pertinent to the discussion of professional standards is Bankruptcy
Rule 9011, which provides, in part:

> (b) Representations to the Court. By presenting to the
> court (whether by signing, filing, submitting, or later
> advocating) a petition, pleading, written motion, or other
> paper, an attorney or unrepresented party is certifying
> that to the best of the person's knowledge, information,
> and belief, formed after an inquiry reasonable under the
> circumstances, —
>
> . . .
>
> (2) the claims, defenses, and other legal
> contentions therein are warranted by existing law
> or by a nonfrivolous argument for the extension,
> modification, or reversal of existing law or the
> establishment of new law; [and]
>
> (3) the allegations and other factual contentions
> have evidentiary support or, if specifically so
> identified, are likely to have evidentiary support
> after a reasonable opportunity for further
> investigation or discovery[.]

Fed. R. Bankr. P. 9011(b)(2), (3).

Taken together, the above provisions require an attorney representing a
debtor in bankruptcy to thoroughly interview the client, to require the client to
produce relevant information, to review the client's financial documents and
other information provided, and to resolve any inconsistencies or questions
before filing the case. *In re Tatro*, 2020 WL 534715, at *5-6 (Bankr. C.D. Ill.
Jan. 31, 2020). The attorney must "make a reasonable inquiry as to the
circumstances giving rise to the bankruptcy petition and all facts asserted
therein." *In re Beinhauer*, 570 B.R. 128, 136 (Bankr. E.D.N.Y. 2017). Whether

an attorney's investigation into the facts asserted in a bankruptcy petition is reasonable depends on the circumstances of a particular case. *Tatro*, 2020 WL 534715, at *6 (citation omitted). "But as a minimum, it is clear that an attorney may not just simply rely on information provided by a client without independently verifying publicly available facts." *Id.* (citing *Beinhauer*, 570 B.R. at 137; *Dignity Health v. Seare (In re Seare)*, 493 B.R. 158, 211 (Bankr. D. Nev. 2013)). Verifying the identity of a debtor and the accuracy of basic identifying information included in the petition—like the registered name and EIN for corporate entities—is a fundamental part of those duties.

It is obvious that no attempt was made to verify the debtor names and other pertinent information in these cases before filing. Attorney Abbott hedged in responding to questions about whether the Ostling Firm has pre-filing procedures that include running the names of corporate debtors through the Secretary of State's website for verification and whether such a search was run in either case here. But regardless of Attorney Abbott's unwillingness to admit the obvious truth, there is simply no doubt that no one ran any searches in either case and neither Attorney Abbott nor Attorney Carlisle had any reasonable belief or expectation that anyone had run such a search. Had anyone checked the Secretary of State records, they would have discovered—as Trustee Inghram and Trustee Erickson did—that no records existed for the entities named on the petitions. The attorneys did not run a name search and did not have an office policy requiring a search be run by clerical staff; the

14

representation now that they thought a search was run in each case is not the least bit credible.

Even without an established policy of searching the Secretary of State records when filing a case for a corporate debtor, Attorney Abbott, Attorney Carlisle, and their staff should have seen the problems with these two cases. As part of his initial review in the Le La Nails case, Trustee Inghram noticed the discrepancy between the name on the petition and the name on the tax returns provided to him by the Ostling Firm. In the Autopro Transportation case, Trustee Erickson's own inquiry regarding scheduled bank accounts quickly led to his discovery that the accounts were held under names and EINs other than those listed on the petition. Had Attorney Abbott, Attorney Carlisle, or anyone from the Ostling Firm performed a meaningful review and comparison of the information asserted in the petitions and the documents upon which those assertions were based prior to filing, they would have been alerted to the fact that the names listed on the petitions did not match other available information. Either they did not collect the tax returns, bank statements, and other required documents before filing the cases or they collected the documents but gave them no meaningful review. This Court has previously admonished the Ostling Firm and its attorneys that they must review documents and information provided by their clients and, when discrepancies are discovered, the duty to investigate further arises and requires the asking of additional questions, the production of additional documentation, or

consultation of public records like those available through the Illinois Secretary of State's website. *Tatro*, 2020 WL 534715, at *6.

In *Tatro*, the Ostling Firm attorneys sought to reopen a bankruptcy case in which they represented the debtor to file a motion to avoid a lien on the debtor's personal property. *Id.* at *1. At the same time, the attorneys filed an amended fee disclosure to reflect additional charges to their client for reopening the case and avoiding the lien. *Id.* The UST asked this Court to review the debtor's transactions with his attorneys, asserting that, as regular bankruptcy practitioners, the Ostling Firm attorneys should have anticipated the potential existence of the lien and should have utilized the Illinois Secretary of State's free, user-friendly, online database before filing the case to quickly determine whether financing statements had been filed against their client. *Id.* The Court agreed with the UST and ordered disgorgement of the additional charges. *Id.* at *4-7. Noting that it was not the first time that the Ostling Firm and its attorneys had been admonished about their statutory duty to investigate and inquire into the accuracy of information provided by debtors, the Court expressed surprise that the firm had "apparently not instituted proper procedures to comply with the statutory duties imposed on its attorneys." *Id.* at *4 (citing *In re Moffett*, 2012 WL 693362, at *3-4 (Bankr. C.D. Ill. Mar. 2, 2012)). Perplexed by the Ostling Firm's resistance to utilizing a free, public database that can be searched in less than a minute, the Court explained that, under the circumstances before it, "the minimum standard of competency and

16

professional responsibility requires a search" of the Secretary of State's records. *Id.* at *6.

The Ostling Firm's continued resistance to instituting proper procedures and incorporating the use of the Secretary of State's fast, free, and easy-to-use online resources as part of its pre-filing procedures is baffling. The firm's attorneys are certainly aware of the availability of these resources and the fact that they provide a quick, easy, and cost-effective way of complying with their obligation to verify debtor information. *See id.* at *6. Whether the Ostling Firm attorneys take advantage of the resources available to them is, ultimately, their prerogative. But the fulfillment of their duties as bankruptcy attorneys to investigate and inquire into the accuracy of information provided to them before presenting it to the Court with their signed certification is not optional. *Id.* at *6-7; 11 U.S.C. §707(b)(4)(C), (D); Fed. R. Bankr. P. 9011(b).

Without question, Attorneys Abbott and Carlisle failed to satisfy their professional obligations in these cases. They did not thoroughly and diligently check their work or make any meaningful inquiry into the facts asserted in the petitions before filing them as required by the Bankruptcy Code and Rules. As a result, petitions were filed on behalf of entities that did not exist to the detriment of the intended debtor entities, yielding no value for the services that the attorneys were paid to provide. Disgorgement of both their fees and the costs of filing is necessary. *See Tatro*, 2020 WL 534715, at *7 (requiring disgorgement of the full amount collected from the debtor to reopen the case and perform services that should have been provided in the first place).

It is worth noting that the attorneys' handling of the cases after the petitions were filed did not help their cause. The Le La Nails case was commenced more than two months before the Autopro Transportation case. In that time, the Ostling Firm was made aware of the problem with the debtor's name in the Le La Nails case when Trustee Inghram raised the issue at several creditors meetings. Nevertheless, the Autopro Transportation case was filed with the same problems. After Trustee Erickson raised the issues in his motion to compel the production of corporate and financial documents related to the Autopro Transportation case in anticipation of the first scheduled creditors meeting, the Ostling Firm attorneys did little to nothing to address the matter promptly.

At the initial hearing on the motion to compel, Attorney Abbott said he was looking into the issues, but, again, it was apparent that neither he nor Attorney Carlisle had gathered the relevant documents prior to filing or they had failed to review the information that was collected. An order was entered compelling production of the documents, and the matter was set for continued hearing to monitor compliance. The documents ultimately produced related to an entity with a similar but different name from that on the petition and a wholly different EIN, confirming the Trustee's suspicions that the wrong name and EIN had been used in the petition. But the Trustee was not able to inquire further because no one from the Ostling Firm appeared at the creditors meeting. Attorney Abbott, appearing at the continued hearing on the motion to compel, was unable to explain the missed creditor meeting; he blamed Attorney

18

Carlisle instead. He also stated that he was "preparing to amend" the petition in both cases but had obviously not yet researched the viability of the proposed solution when questioned by the Court and asked for even more time to do so. Amended petitions were eventually filed, but only after several weeks of inaction and the UST had filed motions to dismiss both cases.[2] Attorney Abbott's and Attorney Carlisle's conduct fell well short of minimum standards for competent representation, and the fees they and the Ostling Firm charged and collected were unreasonable. *See* 11 U.S.C. §329(b); Ill. R. Prof'l Conduct (2010) R. 1.1 and 1.5(a) (eff. Jan. 1, 2010).

In filing these cases on behalf of nonexistent entities without thoroughly investigating or inquiring as to the accuracy of what was being asserted in the petitions, the attorneys risked more than case dismissal and their own pecuniary interests. They left the entities that hired them without any of the protections and benefits that typically accompany a bankruptcy filing, and their error could have impacted the affairs of wholly distinct entities with no connection to the intended debtors other than having a similar name. The attorneys also exposed themselves and the representatives of the intended debtor entities to serious legal jeopardy based on their filing of false certifications and declarations.

As the Court explained in its August 18th opinion on dismissal, filing each case on behalf of an entity that never existed created a unique

---

[2] As stated in the August 18th opinion, the filing of amended petitions to substitute new, existing debtors for the original, nonexistent ones did not resolve the issues and was insufficient to avoid dismissal. The fact that amended petitions were ultimately filed is relevant here because it was the only action taken by the Ostling Firm and it came only after significant delay.

predicament whereby no one was authorized to file anything—whether the petition itself or subsequent amendments—on behalf of the purported debtor. Yet, both petitions included unsworn declarations signed by individuals under penalty of perjury asserting that they were authorized to file for the named entities and that the information therein was true and correct. 28 U.S.C. §1746; Fed. R. Bankr. P. 1008. And because those individuals were in fact not representatives of the named entities but rather some other existing entities not associated with the filings, they submitted false declarations under penalty of perjury. Likewise, both Attorney Abbott and Attorney Carlisle signed and filed fee disclosures certifying that the nonexistent debtors were the sources of the compensation paid to them. 11 U.S.C. §329(a); Fed. R. Bankr. P. 2016(a), 9011(b). And again, because the purported debtors did not exist, the attorneys' signed certifications were false, subjecting themselves to possible sanctions. *See* Fed. R. Bankr. P. 9011(c).

The individuals that retained the attorneys to file bankruptcy petitions on behalf of the entities they purported to represent had an independent obligation to review the documents and the facts asserted in each petition before signing. But the attorneys are the experts, and they cannot blindly rely on information provided by clients or assume that the clients fully understand the obligations imposed under the Code and Rules. *Beinhauer*, 570 B.R. at 137; *Seare*, 493 B.R. at 211. Of course, mistakes do happen, but that fact illustrates the importance of an attorney's duty not only to engage in meaningful review of client-provided information but also to engage with the

client in a manner so as to ensure the fullness and accuracy of the information provided. *Seare*, 493 B.R. at 210.

Attorney Abbott filed responses in both cases to the UST's Motion to Examine Debtor's Transactions with Attorney stating that "Counsel elects to not file a substantive response." In other words, Attorney Abbott, Attorney Carlisle, and the Ostling Firm declined the opportunity to show that the fees paid to them were reasonable notwithstanding the serious concerns raised about their handling of the cases and the legal services provided. "Once a question has been raised about the reasonableness of the attorney's fee under section 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable." *In re Geraci*, 138 F.3d 314, 318 (7th Cir. 1998) (citations omitted). In the absence of any attempt to justify the fees and costs charged or to establish that some value was received for the compensation paid, none of the compensation paid can be found to be reasonable. Attorney Abbott, Attorney Carlisle, and the Ostling Firm failed to meet the minimum standards of practice and all amounts paid to them must be disgorged to the entities that made the payments.

## IV.    Conclusion

The Ostling Firm attorneys filed cases on behalf of two nonexistent entities—Le La Nails, LLC and Autopro Transportation Inc. Neither ever had a residence, domicile, place of business, or property in the United States. Neither ever had a shareholder, officer, director, member, or manager authorized to file

a bankruptcy case on its behalf. Attorney Abbott and Attorney Carlisle surely would have realized this had they made even a minimal inquiry and investigation into the facts of each case before filing. They clearly made no inquiry and did no investigation, rendering their services worthless and potentially harmful to the intended debtor entities and their individual representatives, as well as others. All amounts paid to the attorneys were therefore excessive and must be disgorged.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ###